## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

### May 24, 1923.

## THE PEOPLE v. ANTONIO DI GREGARIO.

### (205 App. Div. 630.)

(1) ROBBERY IN FIRST DEGREE—MESSENGER OF BANK DESIGNATED BY DEFENDANT, WHO WAS HEAD MANAGER, AND BOND SALESMAN OF BANK WERE ROBBED OF LIBERTY BONDS WHICH THEY WERE DELIVERING—ROBBERY WAS CLEARLY PROVEN.

A messenger in a bank who was assigned by the defendant, who was head messenger, and a bond salesman of the bank were robbed in the streets of Brooklyn of Liberty bonds which they were delivering. The robbery was clearly proven. The defendant made several confessions which completely established his relationship as a principal in the commission of the crime by aiding and abetting the same. The defendant contended that the finding of guilt being wholly based upon his confession did not establish his guilt beyond a reasonable doubt in view of the evidence offered by him that the confessions were induced by threats inculcating fear. The witnesses for the prosecution to whom the confessions were made testified that the same were voluntarily made and without inducements or threats.

*Held,* that the fact that some of the confessions were made to the police and prosecuting officer did not render them inadmissible where those to whom the confessions were made testified to their voluntary character.

(2) SAME—WHETHER DEFENDANT'S CONFESSION WAS INDUCED BY FEAR WAS QUESTION FOR JURY AND WAS PROPERLY PRESENTED.

That the question whether the confessions were made under the influence of fear produced by threats was one of fact for the jury under proper instructions which were given and their determination cannot be disregarded.

(3) SAME—CONFESSION NOT REQUIRED TO BE CORROBORATED UNDER CODE CRIM. PROC., § 395—ADDITIONAL PROOF THAT CRIME WAS COMMITTED IS ALL THAT IS REQUIRED.

Section 395 of the Code of Criminal Procedure does not require that a confession shall be corroborated but provides merely that a confession is only insufficient to warrant conviction when there is lacking the "additional proof that the crime charged has been committed."

(4) SAME—NOT ERROR TO REJECT TESTIMONY THAT SOMEONE ELSE WAS PROSECUTED FOR CRIME ARISING OUT OF TRANSACTION.

It was not error for the court to exclude a question asked by the defendant's counsel on cross-examination as to whether or not another person had been tried for receiving stolen property consisting of the bonds in question.

APPEAL by the defendant, Antonio Di Gregario, from a judgment of the Supreme Court, county of Kings, rendered against him on the 24th day of June, 1921, convicting him of the crime of robbery in the first degree.

*Edward J. Byrne* (*Leonard F. Fish* and *Israel Brinkman,* with him on the brief), for the appellant.

*Henry J. Walsh, Assistant District Attorney* (*Charles J. Dodd, District Attorney,* and *Harry S. Sullivan, Assistant District Attorney,* with him on the brief), for the respondent.

KAPPER, J.:

Defendant was jointly indicted with Antonio Vanilla and Joseph Amurso for the crime of robbery in the first degree. Defendant was separately tried and convicted. He worked for Kean, Taylor & Co., bankers in the borough of Manhattan, as head messenger. The firm had for delivery to Igoe Brothers of

69 Metropolitan avenue, Brooklyn, Liberty bonds of the par value of $466,000. The delivery was intrusted to the firm's bond salesman and a messenger whom the defendant assigned to assist the salesman in this delivery. The delivery of the bonds was to be made on November 30, 1920, and for this purpose the bond salesman and the messenger assigned left said banking firm's office with the bonds in a handbag about 1 o'clock. The salesman and messenger, after crossing from Manhattan borough to Brooklyn borough by way of the elevated railroad, then went on foot a short distance to Igoe Brothers' place of business, and when within ten or twelve feet of the entrance several men came suddenly from behind them, flashed guns, and commanded the salesman to drop the bag. The latter attempted to escape, but the men held him and started to hit him on the back of the head with the butts of their guns. A shot was fired and one of the men pulled the bag from the salesman's hand and then with the other "hold-up" men ran toward a standing automobile in which they escaped. The proof of the robbery was complete. The defendant's connection with it is the issue. The prosecution claims that the defendant overheard a conversation between the bond salesman and the clerk in charge of the bonds in the office of Kean, Taylor & Co. on November 29, 1920, the day before the robbery, of the purpose to make the delivery of the bonds to Igoe Brothers on the following day; that the defendant was acquainted with his codefendant Vanilla who frequented a barber shop in East Eleventh street in the borough of Manhattan; and that the defendant visited that barber shop in the evening of November 29, 1920. Vanilla was positively identified on the defendant's trial as one of the robbers. These facts and circumstances, while important, were quite inconclusive. The defendant was arrested and accused. After first denying knowledge of or complicity in the crime, he made five separate confessions, one to his employer, one to Police Captain Carey, two to an assistant district attorney, and one to Police Captain Coughlin. The

substance of the confessions is that on the night previous to the robbery he met Vanilla in the barber shop referred to; that he told Vanilla that the bonds were going over to Brooklyn the next day, and that " if he wanted to pull off a job, there was his chance "; that at the said barber shop the defendant and his companions had a sort of social club of which Vanilla was called the " chief," and the defendant, because of his employment, was called " the banker "; that Vanilla had told him " if ever I could get a good job, to tip them off "; that he told Vanilla when and where the bonds were going to be delivered; that he gave Vanilla a physical description of the bond salesman, the kind of bag in which the bonds were to be carried, and how the messengers were going to make the trip; that Vanilla called him on the 'phone on the morning of November 30, 1920, asking whether the messenger had started with the bonds; that Vanilla gave him a number to be called back in turn when the messengers were leaving; and that he left his place of employment and called up Vanilla from a telephone booth in another building, to whom he gave the information that the messengers would leave at one o'clock. Without going into further details, it suffices to say that the confessions completely established the defendant's relation of a principal to the commission of the crime in aiding and abetting the same. (Penal Law, § 2.) As a witness in his own behalf, the defendant sought to destroy the effect of his confessions by a claim that the police threatened to beat him; that his employer's representative on the occasion of his first confession to him told him that the police were going to " sweat blood " out of him; and that his brother, who was also under arrest as a suspect in connection with this crime, urged him to confess and suggested that he had better mention Vanilla's name, which he says he did to save himself and his brother from injury at the hands of the police. This brother had previously been convicted of the crime of burglary.

The main contention of the defendant is that his conviction

was wholly based upon his confessions, which did not establish his guilt beyond a reasonable doubt in view of his evidence that the confessions were induced by threats inculcating fear. The witnesses for the prosecution to whom the confessions were made established that the same were voluntarily made and without inducement or threat. The learned trial justice fairly charged the jury that if the confessions were made " as the result of fear induced by threats, the law says it cannot be used against him; but if you find that it was not made as the result of fear induced by threats, the law says it is for you to determine what it shows, if anything, regarding the guilt or innocence of the defendant." The fact that some of the confessions were made to the police and prosecuting officer did not render them inadmissible where, as here, those to whom the confessions were made testified to their voluntary character. And where the testimony of the defendant is to the effect that he made the confessions under the influence of fear produced by threats, the question then becomes one of fact for a jury to determine under proper instructions, and their determination, in the circumstances, may not be disregarded. (People v. Cassidy, 133 N. Y. 612; People v. Randazzio, 194 id. 147, 156.) Corroboration of the confessions was not required. A confession is only insufficient to warrant conviction when there is lacking the " additional proof that the crime charged has been committed." (Code Crim. Proc., § 395.) " It will be observed that the statute does not require that the confession itself shall be corroborated. It provides merely that alone it shall be insufficient to warrant conviction. The only additional proof which the statute makes necessary to justify a jury in convicting a defendant who has confessed his guilt is that there shall be proof ' that the crime charged has been committed.' There must be evidence in addition to the confession to prove the *corpus delicti,* but when, as in this case, the *corpus delicti* is proved by independent evidence, and the defendant has voluntarily confessed his guilt, a case for the

jury is made out, and a conviction based upon such testimony is warranted in law." (People v. Roach, 215 N. Y. 492, 600.) As stated, the proof of the commission of the crime was ample, and it is to be noted that the circumstances referred to at the outset were abundantly supported by the confessions.

The defendant asserts a single error in rulings upon evidence. The banking firm's general manager was asked on cross-examination whether a brother-in-law of one of the firm in question was known to the witness as "-vice-president of a southern bank," and he answered that he knew nothing " about his personal affairs." He was then asked: " Q. Do you know whether a vice-president. of a southern bank was tried for receiving stolen property, consisting of these bonds?" Objection to this question was sustained. Counsel for the defendant said: " I think the jury ought to know the truth in this case." The court then stated that a ruling was simply being made on an objection, and added: " What difference does it make who is tried for this crime at other places or here, even?" The proposition that counsel may have had in mind, if any, was not further elucidated, and we think the ruling in excluding the question was correct.

We think the judgment of conviction should be affirmed.

KELLY, P. J., RICH, JAYCOX and MANNING, JJ., concur.

Judgment of conviction affirmed.