Thomas Dickens, J.
I had granted an inspection of the G-rand Jury minutes of this prosecution, and now I am asked by means of this supplementary motion to dismiss the indictment.
G-rand larceny in the first degree, for the alleged stealing of scaffolding, is the substance of the accusation set forth in what appears to be the only count in the indictment. This charge, defendants not only deny but also contend that there is no just basis in law for the finding of the indictment by the G-rand Jury.
In legal effect then, defendants mean to say that1 ‘ When the statute describes the offence, the proof, as well as the allegations of the indictment, must bring the case within the statute [Penal Law, §§ 1290, 1294].” (Wood v. People, 53 N. Y. 511, 514.) In other words, “In a criminal prosecution nothing is taken by intendment against the accused.” (Wood v. People, p. 515.)
This prosecution became the offshoot of a civil transaction, as the result of an alleged asportation of the seaffoldage that was used in the performance of repair work done by complainant, pursuant to contract, on the front and the rear fagade of a building owned by defendant Pleckenstein.
A careful winnowing of the evidence has uncovered a glaring conflict in the testimony given by the two main witnesses of the People — a conflict which, from my point of view, touches the very heart of the issue, and makes its telling effect decisive.
The witness G-oldberger, who, as a member of the complaining corporation, was the one engaged by defendant Fleckenstein to do the work, testified that he learned about the missing scaffolding when he had visited the building for the purpose of seeing defendant Pleckenstein about the balance of the money due for the work. This visit took place on Tuesday, March 22, 1960, four days after the day when the work had been finished, that is, on Friday, March 18, 1960.
On the other hand, the other witness, a proverbial “ sidewalk superintendent,” testified that the scaffolding had been removed “ a little over seven days — after the job was done,” that is, at the minimum, on March 25, 1960.
How then, in the face of these divergent statements touching the very crux of the case, can it be logically argued that a removal took place on the seventh day, March 25, or beyond, when in reality the scaffolding was not on the premises on the *730 fourth day, March 22, the latter date being the time, as indicated before, according to the testimony given by the complaining corporation itself through the mouth of Goldberger, its representative transactor!
True, it is, that the codefendants, Fleekenstein’s employees, who had worked on the building, admitted that they had removed scaffolding. However, the kind to which they had admitted when questioned by the police officer, who gave testimony on this score, was ‘ ‘ scaffolding that was hanging from the roof by rope, and overhanging scaffolding ’ ’ — scaffolding 1 ‘ that his employer rents ”, whereas the scaffolding belonging to complainant was of the kind that was built ‘ ‘ right from the ground. It is not suspended, or anything like that.” And further, “ It is a built-up scaffold, wood and metal construction ”; and this “built-up” scaffolding was the same kind about which the so-called ‘ ‘ sidewalk superintendent ’ ’ had testified.
At this point, it should be noted that, about the time when a dispute was taking place over the balance of money due, the scaffolding was, on the insistence of Goldberger, left at the premises for readiness in the event that corrections had to be made; but, however, against the expressed wish of defendant Fleckenstein. (Compare factually with People v. Saas, 4 Misc 2d 654; People v. Stecker, 140 Misc. 684.)
Focusing attention on the principles of law which hold that the rudimentary rules of evidence pertaining to the presumption of innocence in favor of a defendant and the burden of proof devolved upon the People, prevail also in the Grand Jury room, and that the test for a motion to dismiss an indictment for failure of proof is the same that governs such kind of motion at the end of the People’s case (People v. Sclafani, 8 Misc 2d 986); that suspicion or conjecture or surmise is not sufficient to make out a prima facie case (People v. Sclafani, supra); that a mere scintilla, or even some proof, is not sufficient to warrant submission of a case to a jury (People v. Williams, 182 Misc. 841); and that the burden is on the prosecution to reconcile inconsistent testimony of prosecution’s witnesses, inasmuch as a defendant is safeguarded with the presumption of innocence (People v. Nicosia, 164 Misc. 152), I am of a mind that the evidence, in the light of these authorities, does not as a matter of law (People v. Hattemer, 4 A D 2d 775, affd. 4 N Y 2d 835) make out a larceny for a taking and carrying away of personal property of another with the specific intent of stealing it. (See People v. Levan, 295 N. Y. 26, 33; Penal Law, §§ 1290, 1294.) (See, also, People v. Saas, 4 Misc 2d 654, supra.) Consequently, in the circumstances of this case, I feel it to be my *731 duty, for the protection of these defendants in their constitutional prerogatives, to order a dismissal of the indictment. (People v. Kellner, 52 N. Y. S. 2d 355.) The motion for a dismissal of the indictment is granted and defendants are ordered to be discharged.